666 So.2d 1356 (1995)
Michael Lee TRIPLETT
v.
STATE of Mississippi.
No. 91-KA-00782-SCT.
Supreme Court of Mississippi.
November 30, 1995.
*1357 C. Hugh Hathorn, Louisville, for Appellant.
Michael C. Moore, Attorney General, John R. Henry, Jr., Special Ass't. Attorney General, Jackson, for Appellee.
En Banc.

ON PETITION FOR REHEARING
HAWKINS, Chief Justice, for the Court:
The original opinions in this case are withdrawn and these opinions are substituted therefor.
Michael Lee Triplett has appealed his conviction of manslaughter in the circuit court of Winston County and sentence to twenty years' imprisonment. His sole assignment of error is that he was denied the effective assistance of counsel guaranteed him by the Sixth Amendment to the United States Constitution. We agree and reverse.
The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. By the Fourteenth Amendment this right is made obligatory upon the States. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). This right means "the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970).
The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

Strickland v. Washington, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (emphasis added).
Article 3, § 26 of our Constitution provides: "In all criminal prosecutions the *1358 accused shall have a right to be heard by himself or counsel, or both... ." We hold today that the Mississippi Constitution's right to counsel embraces all rights guaranteed to a criminally accused defendant by the Sixth Amendment.
As Strickland and our cases following this United States Supreme Court decision illustrate, the difficulty comes in applying this right to the multiple variety of instances in which its infringement is claimed.

FACTS
William Earl Eiland, doing business either as "Eiland's Cafe" or "Willie Earl's," in 1988 operated an unpretentious restaurant in the High Point Community in the extreme northern part of Winston County only a short distance from the Choctaw County line. Simply looking at the ramshackle building in this rural area one would wonder at its apparent popularity as a hang-out for young people.
On Thursday night, September 1, 1988, Triplett, nineteen years of age and a senior in the Ackerman high school, was at a football game in Weir, Choctaw County, and while there had some difficulty with a young man, later identified as Alfonso (Bobo) Evans. According to Triplett, Evans pulled a knife on him.
Late Friday night, around 10:30 and after a football game in Ackerman, Triplett went with his friends Kevin Miller, Darrell Estes, Howard Lewis, and Karry Bray to Willie Earl's. That night Wayne Arterberry, a seventeen- or eighteen-year-old sophomore in the Weir high school and on the football team, also went to Willie Earl's in the company of Michael Herbert, Melvin Dotson, and Alfonzo and Kevin Evans. Arterberry weighed approximately 150 pounds and was approximately 5 feet 11 inches tall.
Another group who went to Willie Earl's that night was made up of Willie Miller, Thomas Coffee, Bobby Joe Woodard, an unidentified female, and Willie McCain, all in McCain's car.
Inside Triplett saw Evans and accosted him about pulling the knife on him. An argument started and a group of the young people went outside where it continued.
According to Coffee, a state witness, Triplett at some point cursed and grabbed Arterberry, who had been trying to get away from Triplett, and then shot him.
There is agreement between the state and defense witnesses that after the group got outside Arterberry also had something to say in the argument between Evans and Triplett.
Triplett's version was as follows: Arterberry had a knife that night outside the cafe, and Triplett was afraid of Evans and the group he was with. He had told them he wanted no trouble. While outside Dwight Gibson gave him a pistol. Triplett had never before fired a pistol. To scare the group off, Triplett shot in the air.
After he had fired the first shot, Karry Bray came up behind Triplett, "jumped on my back and grabbed my arm and I wrestled with him and it went off." R.II, 202.
Bray testified he only heard the first shot, and did not know the circumstances under which it was fired. While running, attempting to flee he came up behind Triplett and saw him with the pistol. According to Bray, when he saw the pistol, he grabbed Triplett's right arm and was tussling with him when it went off, the bullet striking Wayne Arterberry in the chest.
The bullet lodged in a thoracic vertebra, and Arterberry died a few hours later from excessive bleeding in the Winston County Hospital.
Triplett got in Joe Baber's car, gave Baber the pistol, and was taken home by Baber. Larry Murphy left with them.
In a statement given to Winston County Sheriff Billy Rosamond when he was investigating the killing, Bray neglected to mention that he had grabbed Triplett, causing the weapon to fire.
Triplett also significantly failed to mention, in a statement given to the sheriff the next *1359 day which was typed, that it was Bray's wrestling with him that caused the weapon to fire. While most of Triplett's typed statement was consistent with his trial testimony, as to the shooting it read as follows:
I was walking off and Wayne Arterberry came behind me and started talking some junk, and I said please man don't mess with me. I don't want any trouble. I started walking off again and he kept running his mouth. I kept walking and I walked up to Dwight Gibson and he took a pistol from his back pocket and handed it to me. I held the gun in my right hand and put my hand under my shirt and I seen Wayne Arterberry with a knife in his right hand. I went berserk and fired the gun at Wayne Arterberry twice. I missed him the first time & the second shot hit him. I turned around and walked off and told Joy Wayne Baber to carry me home. I went home and the Choctaw County Deputy Sheriff came and picked me up.
Triplett's family employed Richard Burdine, an attorney from Columbus, to defend him. The Winston County grand jury indicted Triplett for murder October 12, and he went to trial November 3, 1988.
Counsel's legal representation of Triplett which raises questions consists of the following:
(1) No request for pre-trial discovery was made. At trial counsel's lack of familiarity with Triplett's statement to the sheriff was demonstrated when he was questioning Triplett, who had just testified the gun was fired twice.
Q. Twice. And is it in your statement  I think it may be in your statement that it was fired three times. Is that right?
A. No, it's not in my statement. It was fired twice.
Q. Twice.
Counsel was also apparently unaware that Bray had given a statement to the sheriff which omitted any mention of the reason the second shot was fired.
(2) The record reveals no request by the defense for subpoenas. At least 17 or 18 individuals were named during the course of the trial who were at the scene. The killing occurred in a county where neither Triplett nor Arterberry resided, and defense counsel lived some forty miles away. Counsel's lack of familiarity with the trial witnesses was indicated by his inability to get their names right when they were testifying. Three witnesses at the scene testified for the state, namely: Willie Miller, Baber and Coffee.[1] Four testified for the defense, namely: Deborah Vaughn, Howard Lewis, Jr., Bray and Triplett.
(3) There was no attempt to seek a continuance in order to better prepare for trial.
(4) The defense did not request a special venire, and there were no challenges for cause by the defense or State.[2]
One juror, Goss, remained, whose nephew two years previously had been shot and paralyzed *1360 in the manner Arterberry was shot. Goss also lived in the High Point community and knew Eiland.
(5) The 1990 census shows Winston County is 41% black. No Batson question was raised by defense counsel.
(6) Counsel made no attempt to suppress or challenge the voluntariness of Triplett's statement to the sheriff presented as part of the state's case in chief. Indeed, he complimented the sheriff, telling him he knew him and that he had complied with the law.
(7) Counsel made no attempt to explain, deflect or minimize during his direct examination of Bray the significant failure by him to tell the sheriff during his investigation that the reason the second shot was fired was Bray wrestling with Triplett. He left it all to be brought out in a telling cross-examination by the state, forming the major part of the state's closing argument. This suggests counsel was unaware of Bray's statement prior to trial, and may not have known of Bray's pre-trial statement until it was brought out on cross-examination. Counsel at the very least in his direct examination of Bray should have given him the opportunity to tell why the statement to the sheriff did not disclose the reason for the second shot. This was a glaring omission and the worst possible time to have it disclosed to the jury was during cross-examination.
(8) The sheriff during his investigation found a knife at the scene of the shooting. Counsel attempted to have the knife introduced into evidence during his cross-examination of the sheriff, but the circuit judge ruled it could not be introduced then. The circuit judge asked counsel if the defendant intended to testify, and upon being told by counsel that he would, the court informed counsel that the knife could be introduced when the defendant testified. Counsel made no attempt, however, to introduce the knife at any subsequent time during trial. Thus, this item of demonstrative evidence was not seen by the jury. On the other hand, counsel introduced into evidence the pistol, which theretofore had only been offered for identification by the state.
(9) Counsel offered no instruction factually embracing his client's defense, namely: that he had fired a pistol shot into the air to scare the group away from him, and had no intention of firing another, but the second shot was caused solely because Bray unexpectedly grabbed him and was wrestling with him. Counsel was granted the following abstract instruction:
INSTRUCTION NO. D-1
The killing of any human being by the act of another is excusable homicide when committed by accident while doing any lawful act by lawful means with usual and ordinary caution and without any unlawful intent. If you find from the evidence that Michael Triplett shot and killed Wayne Arterberry while doing any other lawful act by lawful means with usual and ordinary caution and without any unlawful intent, then you shall find the Defendant not guilty.
The State was granted an instruction on culpable negligence.
If Triplett in fact believed that he was in great danger of serious bodily harm at the hands of Evans or Arterberry and had good reason for such belief, he had a right to arm himself, and did not violate the law by firing the pistol into the air, and further if the jury believed that the reason Arterberry was shot was the explanation given by Bray and Triplett at trial, then the shooting was an excusable accident. It was, of course, a jury question whether this killing resulted from culpable negligence or non-criminal accident.
The jury retired to deliberate at 11:15 a.m., and returned a verdict of manslaughter 55 minutes later.
While not affecting the outcome of the trial, symptomatic of counsel's performance *1361 was his failure to perfect an appeal. Triplett v. State, 579 So.2d 555 (Miss. 1991). It was only after a petition for post-conviction relief was filed that this Court granted an out of time appeal.

LAW
The Defendant is entitled to a basic defense. The basic defense set out herein is not intended to become a standard of review or a template or criteria to be applied in future cases where ineffective assistance of counsel is raised; however, it is descriptive of the failure, in this case, of the defense attorney to perform any act basic to the defense of the accused. Basic defense in this case required complete investigation to ascertain every material fact about this case, favorable and unfavorable. It required familiarity with the scene, and the setting. It required through his own resources and process of the court learning the names of, and interviewing every possible eyewitness, and getting statements from each. It required prior to trial learning all information held by the state available to the defense through pre-trial discovery motions. No competent evidence available through pre-trial discovery should come as a surprise at trial.
Counsel may have been able to locate and interview some eyewitnesses, but despite reasonable effort unable to locate others. Here the use of subpoenas covers two purposes. It utilizes the services of the state in locating the witness for interview, and also secures his or her attendance at court. Miss. Code Ann. §§ 99-9-11, -17, -21 (1972); Stringer v. State, 627 So.2d 326, 329 (Miss. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2684, 129 L.Ed.2d 817 (1944). Failure of counsel to issue subpoenas even for friendly, favorable witnesses is perilous, because if for some reason the witness fails to appear, a pre-requisite for continuance is that he or she is either under process or a reasonable effort has been made to serve him or her with a subpoena. Eslick v. State, 238 Miss. 666, 119 So.2d 355 (1960); Bolin v. State, 209 Miss. 866, 48 So.2d 581 (1950); Bone v. State, 207 Miss. 20, 41 So.2d 347 (1949). In order to be entitled to a continuance because of an absent witness, counsel must demonstrate to the court that "he has used due diligence" to secure his presence. Miss. Code Ann. § 99-15-29 (1972). Embraced therein is the requirement that counsel has made a timely effort to place the absent witness under a subpoena. Pinson v. State, 518 So.2d 1220, 1222 (Miss. 1988); Watson v. State, 465 So.2d 1025, 1030 (Miss. 1985); Ford v. State, 227 So.2d 454 (Miss. 1969); Thigpen v. State, 206 Miss. 87, 39 So.2d 768 (1949). Having a constitutional right at no cost to himself "to have compulsory process for obtaining witnesses in his favor," Miss. Const. Art. 3, § 26, there is simply no excuse for defense counsel failing to request a subpoena for his witnesses. Counsel was derelict in failing to seek pre-trial discovery and in requesting witness subpoenas.
This slaying took place in a county where neither the defendant, the victim, nor defense counsel lived. It is not shown in the record whether counsel interviewed any witness other than those who testified for the defense, but from his examination of those who testified for the state, it appears he had very little knowledge of the number or names of many of the eyewitnesses. In view of the different versions of how this killing took place, counsel should not have announced ready for trial, but sought a continuance until he had an opportunity to interview every possible eyewitness. Frierson v. State, 606 So.2d 604 (Miss. 1992); Kelly v. State, 553 So.2d 517, 520 (Miss. 1989); Plummer v. State, 472 So.2d 358 (Miss. 1985).
Every prudent attorney will, in ways in which it is ethical for him to do so, endeavor to learn as much as circumstances and inquiry reasonably permit about every prospective juror. This is especially true in rural counties. Generally, in homicide cases one or the other side seeks a special venire. Miss. Code Ann. § 13-5-77 (Supp. 1993). Counsel's failure to seek a special venire could very well have been trial strategy. Odd, in view of the disputed trial testimony, is counsel's failure *1362 to challenge a single prospective juror, which strongly suggests no preparation in the selection of the jury. And striking is his failure to challenge Goss, a juror who lived in the community where the killing occurred, and whose nephew had been shot and paralyzed in an incident similar to this case. It was an unfortunate gamble.
BATSON. Our sister state Alabama has a common-law tradition most nearly aligned to our own. We note that in Ex Parte Yelder, 575 So.2d 137 (Ala.), cert. denied, 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991), her Supreme Court held that counsel's failure to raise the Batson question at trial not only was ineffective but presumptively prejudicial as well. The Alabama Supreme Court observed that the language of Batson v. Kentucky, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986), compelled this presumption. See also Yelder v. State, 575 So.2d 131, 136 (Ala. Crim. App. 1990) (Bowen, J., dissenting), rev'd in part, Ex Parte Yelder, 575 So.2d 137 (Ala.), cert. denied, 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991).[3]
We have adequately covered counsel's trial performance in paragraphs number (6), (7) and (8) of the factual summary.
As noted, under the testimony adduced at trial, the jury would have been warranted in returning a verdict either of murder, manslaughter, or not guilty because of accident.
While Triplett's trial testimony was weak, disputed, and also contradicted by his statement to the sheriff, he was entitled to have the jury instructed by an instruction specifically embracing the facts which he and Bray testified occurred which would have made this killing an excusable accident. The defense was entitled to an instruction which told the jury that if Triplett had good reason to believe and did believe his life was in danger when he armed himself with the pistol handed him by Gibson and then shot it into the air to frighten his attackers away, and the second shot was fired solely because Bray had unexpectedly grabbed him from behind and was tussling with him, and there was no intent on his part to fire the weapon the second shot, then he was not guilty of either murder or manslaughter.
Viewing this entire record, we are compelled to conclude that Triplett did not have the effective assistance of counsel. Perhaps one or two of the above-listed trial failures could have been minimized as trial strategy, Edwards v. State, 615 So.2d 590, 596 (Miss. 1993); Powell v. State, 536 So.2d 13, 16 (Miss. 1988); Mason v. State, 429 So.2d 569, 573-74 (Miss. 1983), in combination they cannot.
The inquiry cannot end there, however. "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 687 (1984). Here the inquiry becomes even more difficult. We have held that in applying the two-pronged test of Strickland we look at the "totality of the circumstances." Frierson v. State, 606 So.2d at 608; Yarbrough v. State, 529 So.2d 659, 662 (Miss. 1988); Waldrop v. State, 506 So.2d 273, 275 (Miss. 1987). Further,
[A]ny court seeking to determine whether the constitutional guaranty has been met, must look at the entire performance of the attorney and determine whether the defense attorney was competent and whether he sincerely tried to assist his client....
Unless the mistake or conduct was of such magnitude that the court concludes *1363 the lawyer was incompetent or evidenced a failure to conscientiously fulfill his adversarial role, we will conclude the constitutional guarantee for performance of counsel as enunciated in Strickland has been met.
Johnson v. State, 511 So.2d 1333, 1340 (Miss. 1987) (emphasis added), cert granted in part, 484 U.S. 1003, 108 S.Ct. 693, 98 L.Ed.2d 646, rev'd on other grounds. 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). See also Frierson, 606 So.2d at 608.
We have examined the entire performance of counsel in this case, and conclude that the record reveals a marked failure of counsel to fulfill his adversarial role which casts grave doubt on the fairness of Triplett's trial. After considering the totality of his performance, it would be vain to extenuate his failures, or to conclude that somehow they did not prejudice Triplett's defense. As we recently held in Stringer v. State, 627 So.2d at 329:
Two important rules of law are at play here: a party is bound by the acts of his attorney [Pace v. Financial Security Life of Miss., 608 So.2d 1135, 1138 (Miss. 1992); Sears, Roebuck & Co. v. Devers, 405 So.2d 898, 900 (Miss. 1981); Fairchild v. GMAC, 254 Miss. 261, 265, 179 So.2d 185, 187 (1965)], and an accused is entitled to a reasonable defense in court with the effective assistance of counsel. Littlejohn v. State, 593 So.2d 20, 22 (Miss. 1992); U.S. Const.Amend. VI. The force of the first rule highlights the necessity of trial courts to insure the enforcement of the second.
Id. at 330 (alteration original).
REVERSED AND REMANDED FOR A NEW TRIAL.
PRATHER, P.J., SULLIVAN, PITTMAN and BANKS, JJ., Concur.
DAN M. LEE, P.J., concurs in result only.
McRAE, J., dissents with separate written opinion joined by JAMES L. ROBERTS, Jr. and SMITH, JJ.
McRAE, Justice, dissenting:
Although there has been no showing in the record that Triplett's attorney was so deficient that his conduct met the Strickland v. Washington test, the majority, based on its own subjective experiences, concludes that Triplett's attorney was ineffective. A claim of ineffective assistance of counsel is no different from any other adversarial proceeding. Unfortunately, the majority does not require a defendant to actually put on proof of ineffective assistance of counsel through an expert's testimony that the original attorney was ineffective or have an adversarial proceeding where the accused attorney can explain his actions. I, therefore, am compelled to dissent from the majority opinion which upholds Triplett's claim of ineffective assistance of counsel.
I also disagree with the majority's holding that Mississippi's Constitution of 1890 embraces "all rights guaranteed to a criminally accused defendant by the Sixth Amendment [of the United States Constitution]." With that statement, we are now bound and required to render decisions in accordance with everything the Supreme Court so holds. The Supreme Court of Mississippi is in a much better position to render decisions concerning its own constitution. Our state constitution's right to counsel affords rights equal to that of the Sixth Amendment of the United States Constitution, and we should not be tied to federal decisions.
Lafave and Israel, Criminal Procedure § 23.3(d) at 877-878 (1985) (quoting California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) states:
[T]he crucial question under the confrontation clause is not compliance with common law hearsay rules, but fulfillment of the "mission of the confrontation clause to advance the accuracy of the truth determining process ... by assuring that the trier of fact has a satisfactory basis for evaluating the truth of a prior statement."
The Supreme Court of Mississippi, acting as an appellate court, ought not have the authority *1364 to make its own conclusions and findings of fact when an ineffective assistance of counsel claim against an attorney has not been adjudicated in a lower court through a motion for a new trial or judgment notwithstanding the verdict after a hearing. It is not for us to decide whether an attorney was ineffective absent any real proof revealed through an adjudication of the matter. This Court must not be an advocate for either side of a proceeding. In the case at hand, the majority does just that, as it labels attorney Burdine ineffective for not conducting extensive discovery, for not directing adequate voir dire and so forth. Attorney Burdine was given no opportunity to respond to and confront in court the claims brought against him.
As with the case at hand, in Perkins v. State, 487 So.2d 791 (Miss. 1986), the criminal defendant sought post-conviction relief under Miss. Code Ann. §§ 99-39-1, et seq. (Supp. 1985). In Perkins, this Court rejected Perkins' contention that he was denied effective assistance of counsel and provided:
In order to prevail on the merits of such a claim, Perkins must show, first, that his counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive him of a fair trial. (citations omitted). To get a hearing he must allege these matters with specificity and detail.

Perkins, 487 So.2d at 793 (emphasis added). This, of course, implies that we, as an appellate court, will not pass judgment on the matter until there has been an adjudication of the ineffective assistance claim through a hearing in a lower court. Although, on its face Miss. Code Ann. § 99-39-27(7) (Supp. 1990) allows this Court to grant relief requested in a criminal defendant's motion, a decision from this Court that an attorney has been ineffective in his representation is inappropriate. Miss. Code Ann. § 99-39-27(7) states:
(7) In granting the application the court, in its discretion, may:
(a) Where sufficient facts exist from the face of the application, motion, exhibits, the prior record and the state's response, together with any exhibits submitted therewith, or upon stipulation of the parties, grant or deny any or all relief requested in the attached motion.
This provision in the Act is simply meant to apply to those situations where both parties to the action agree with everything stated in the face of the application, motion, exhibits and the prior record. In other words, it would apply to the case at hand if both Triplett and the State admitted that attorney Burdine had been deficient in his performance as an attorney. Because the case sub judice fails to meet that standard, the case should be, at most, sent back down to the trial court for a hearing.
The majority bases its opinion on several factors that, when taken together, constitute ineffective assistance of counsel. The fact that no pre-trial discovery or pre-trial motions were generated by defense counsel was one such factor. There is, however, no testimony that Burdine declined the State's discovery. "Decisions of counsel are presumed to be strategic." Handley v. State, 574 So.2d 671, 684 (Miss. 1990). It simply is not possible to determine the reasoning behind attorney Burdine's conduct without an evidentiary hearing where Burdine could testify as to his strategy. The majority admonishes attorney Burdine for failing to attempt to suppress the voluntariness of Triplett's confession. The fact that Triplett killed Wayne Arterberry was not at issue; Triplett admits to the killing even on appeal. The real issue in the case was whether the shooting was in self-defense or accidental so to lessen or lower the charged crime. Therefore, whether the confession to the sheriff was voluntarily given is of no importance, and it alone certainly does not prejudice the defendant. In addition, in any event, Triplett presented no indication that the confession was inadmissible.
Attorney Burdine's failure to issue subpoenas was another such factor. It is of no consequence that Burdine did not issue subpoenas since witnesses were presented on behalf of the defense and since there has *1365 been no assertion that other witnesses existed who could have been helpful to the defense had the defense subpoenaed them.
The majority asserts that Burdine failed to adequately question jurors who ought to have been challenged for cause. The record does, however, indicate that the trial judge closely questioned these jurors. Is there a legitimate reason why defense counsel must ask redundant questions? The majority further asserts that attorney Burdine was deficient in his performance because he raised no Batson issue. It is total speculation for this Court to assume the requisite factors existed for a Batson claim to arise. There is nothing in the record that reveals the race of the jurors against whom the peremptory strikes were used, and because there is nothing in the record upon which to base a Batson argument, this Court should not attempt to insert its lawyer tactics.
The majority reprimands attorney Burdine for not submitting a jury instruction that specifically embraced the "facts which he and Bray testified occurred which would have made this killing an excusable accident." We, however, have opined, "A circuit judge has a responsibility to see that the jury is properly instructed." Duvall v. State, 634 So.2d 524, 526 (Miss. 1994). See Peterson v. State, 518 So.2d 632, 637 (Miss. 1987); Harper v. State, 478 So.2d 1017, 1018, 1022-23 (Miss. 1985). Thus, in light of the fact that another aside from attorney Burdine was required to instruct the jury, this admonishment should not have been used against Burdine in the majority's finding that he was ineffective.
Moreover, the majority concludes in one sentence that the second prong of Batson was met. It is obvious that no prejudice exists since the majority is unable to specifically show how Triplett was prejudiced. The majority states that after "considering the totality of his performance, it would be vain to extenuate his failures, or that somehow they did not prejudice Triplett's defense." There is absolutely no showing in the record of exactly how defense counsel's performance prejudiced the defendant.
This is not to say that Triplett is left without any remedy at law. Pursuant to Miss. Code Ann. § 99-39-5 (Supp. 1990), Triplett has the right to bring an ineffective assistance of counsel claim within three years after his direct appeal is ruled upon by this Court. A criminal defendant must file his post-conviction relief motion in the trial court or if his direct appeal has been affirmed, then he is required to file the motion with this Court. Miss. Code Ann. § 99-39-7 (Supp. 1990). If either this Court or the trial court determines that the defendant presented a showing of a denial of a state or federal right, then an evidentiary hearing is ordered. Miss. Code Ann. § 99-39-19 (Supp. 1990). It is at this point that the attorney presently representing the defendant should be required to specifically put on proof of ineffective assistance of counsel and allow the State to cross-examine and put on proof also. In post-conviction relief cases, this Court is never the fact finder, and it should not be in such a case as the one at hand.
When this Court finds that an attorney was deficient in his representation, we are in effect holding that the attorney was negligent. That being the case, this court is notifying the Mississippi Bar that the attorney should be suspended from his or her practice pursuant to Broome v. Mississippi Bar, 603 So.2d 349 (Miss. 1992). In Broome, this Court suspended an attorney from practicing law for thirty days because of a single incident of simple negligence. Broome, 603 So.2d at 355. I question whether the majority really envisions what the outcome of this decision will so order. A serious problem arises when this Court on its own says without any real proof and without any prior adjudication that an attorney was ineffective. Such attorney is entitled to an adjudication of the matter before an appellate court renders a decision on the matter. Accordingly, I dissent.
JAMES L. ROBERTS Jr. and SMITH, JJ., join this opinion.
NOTES
[1] Baber, who must have been a friend of Michael's, was not cross-examined by the defense. Was there something which might have been elicited on cross-examination? We cannot know.
[2] The record shows the following as to the jurors excused for cause or peremptorily:

(COURT REPORTER'S NOTE: THE FOLLOWING PROCEEDINGS WERE HAD IN CHAMBERS, OUTSIDE THE PRESENCE AND HEARING OF THE JURY IN THIS MATTER, TO-WIT:)
BY THE COURT:
All right. Gentlemen, I'm going to strike for cause Juror No. 37, Angela M. Clark; Juror No. 1, Ms. Maudie L. Hudson; and Juror No. 16, Larry D. Clark.
Are there any other challenges for cause from the State?
BY MR. SNYDER:
The State does not.
BY THE COURT:
Do we have any other for cause from the Defendant?
BY MR. BURDINE:
No, sir.
(COURT REPORTER'S NOTE: AT THIS POINT THE JURY WAS SELECTED, THE STATE STRIKING VARIOUS JURORS AND THE DEFENDANT LIKEWISE STRIKING VARIOUS JURORS. THE JURY HAVING BEEN SELECTED, THE FOLLOWING PROCEEDINGS WERE HAD, TO-WIT:)
BY THE COURT:
Do we have any Batson challenges?
BY MR. BURDINE:
No, sir.
Unfortunately, the record should have disclosed the name, race and gender of the jurors excused peremptorily by the State.
[3] Because the ineffectiveness of counsel in Yelder consisted solely of failure to raise the Batson question at trial, the Alabama Supreme Court remanded the case to the trial court for a Batson hearing. Batson is but one of many of the failures of defense counsel in this case. Counsel was under a duty to make sure that the record included the name, race and gender of the jurors excused peremptorily by the State. As a result of his failure to make sure such information was included in the record, this Court cannot know one way or the other.