# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-DR-01828-SCT

*EDWIN HART TURNER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/15/1997 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | CARROLL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES W. CRAIG |
| | JANE E. TUCKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | PETITION FOR POST-CONVICTION RELIEF DENIED - 01/04/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Edwin Hart Turner (Turner) shot and killed Eddie Brooks and Everett Curry during robberies of two convenience stores in Carroll County.  A jury first found him guilty of two counts of capital murder and subsequently found that Turner should be sentenced to death for both murders.  Turner's appeal from those convictions and sentences was affirmed by this Court, and rehearing was denied. ***Turner v. State***, 732 So.2d 937 (Miss. 1999).  The United

States Supreme Court denied certiorari. *Turner v. Mississippi*, 528 U.S. 969, 120 S.Ct. 409, 145 L.Ed.2d 319 (1999).

¶2.    Both through counsel and pro se, Turner now asks this Court to grant him post-conviction relief pursuant to Miss. Code Ann. Sections 99-39-1, et seq.  He raises numerous issues, primarily related to effectiveness of his attorneys at trial and on appeal.  After a thorough review of the claims raised in the petitions, the Court finds that Turner failed to establish that his attorneys were ineffective and that the other claims raised in the petitions lack merit.  Accordingly, the petitions are denied.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3.    Turner's accomplice, Paul Murrell Stewart (Stewart), confessed his involvement in the robberies and murders.  Stewart pled guilty to two counts of capital murder and received consecutive life sentences without parole.  As part of his plea agreement, he agreed to testify.  At trial, Stewart testified that he and Turner spent the night of December 12 and the early morning hours of December 13, 1997, driving around Carroll and Leflore Counties drinking beer and smoking marijuana.  They decided to rob a convenience store.  Turner was armed with a 6 millimeter rifle, and Stewart was armed with a .243 rifle.  They drove to Mims One Stop on U. S. Highway 82 between Carrollton and Greenwood.  After surveying the scene, they decided that the store was too crowded so they left and drove west to another convenience store on Highway 82.  The second store, Mims Turkey Village Truck Stop, was occupied only by one clerk, Eddie Brooks.  As Turner and Stewart entered the store, Turner ordered Brooks to get down on the floor.  Before Brooks could comply, Turner shot him in the chest with the 6 millimeter rifle.  However, neither Turner nor Stewart could open the

2

cash register. Both fired their rifles into the cash register, but it still wouldn't open. Meantime, Brooks was still alive, lying wounded on the floor. Before they fled the scene, Turner placed the barrel of his rifle to Brooks's face and pulled the trigger. The second shot proved to be fatal.

¶4. After failing to obtain money from the cash register, Turner and Stewart decided to return to Mims One Stop. They parked behind the store and headed toward the door. Stewart went into the store and ordered the cashier to open the cash register. Turner encountered Everett Curry pumping gas in front of the store. While Stewart was inside robbing the store, Turner ordered Curry to the ground and took cash from Curry's wallet. As Curry laid on the ground pleading for his life, Turner unmercifully shot him in the head. Meanwhile, Stewart took approximately $400 from the cash register. The two fled the scene and returned to Turner's house. Curry was abandoned to die.

¶5. Based on their investigation of the robberies and killings, law enforcement officers suspected Turner in the murders. One witness had reported that one of the perpetrators had a white towel wrapped around his face. Turner was known to wrap a towel around his face to conceal his disfigurement from a botched suicide attempt. Turner was also a suspect in a motor vehicle violation and for fleeing police in Leflore County the night of the shootings. A warrant had been issued for his arrest on those charges.

¶6. Therefore, officers sought to question Turner. Turner allowed them into the house where two rifles were observed. In a car outside the house, officers found two items - a white plastic mask like one reported to be used in one of the robberies and a rifle shell. After obtaining a warrant, the officers seized a 6 millimeter rifle and a .243 rifle, along with several

3

boxes of ammunition. The State's firearms expert later testified that the shell casings found at the scene of Brooks's murder came from the two rifles found in Turner's home. Additionally, Turner's fingerprints were found on the 6 millimeter rifle. Finally, the cashier at Mims One Stop identified Turner.

¶7.    Turner was indicted for two counts of capital murder. The trial court granted the defense's motion for a transfer of venue. The case was tried in Forrest County. Turner was convicted of both counts. After hearing evidence of mitigation, the jury found that Turner had actually killed Brooks and Curry, that he had attempted to kill both victims, that he had intended that the killings take place, and that in both instances, he had contemplated that lethal force would be employed. Finally, the jury found that both killings were committed for pecuniary gain during the armed robberies. On both counts, the jury found that the mitigating factors did not outweigh the aggravating factors and that Turner should be sentenced to death.

**ANALYSIS**

¶8.    In his petition for post-conviction relief, Turner raises ten issues. All but two of those claims are allegations of ineffective assistance of counsel. The issues raised in the petition are:

**I.      Venue transfer from Carroll County.**

¶9.    Turner retained two renowned attorneys, John Collette of Jackson and James K. Dukes of Hattiesburg. Collette continued to represent Turner in the direct appeal. Collette and Dukes enjoy a statewide reputation of respect and competency, and both are well seasoned trial attorneys with years of experience in representing criminal defendants.

4

¶10. The standard for determining if a criminal defendant received constitutionally effective counsel is well established. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant must demonstrate that his attorney's actions were deficient *and* that the deficiency prejudiced the defense of the case. *Id*. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984), citing *Strickland v. Washington*, 466 U.S. at 687. The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Stringer,* 454 So. 2d at 477, citing *Strickland*, 466 U.S. at 689. Defense counsel is presumed competent. *Johnson v. State*, 476 So. 2d 1195, 1204 (Miss. 1985)

> Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State,* 584 So.2d 426, 430 (Miss.1991). This means a "probability sufficient to undermine the confidence in the outcome." *Id.*

.   .   .

5

> There is no constitutional right then to errorless counsel. ***Cabello v. State****,* 524 So.2d 313, 315 (Miss.1988); ***Mohr v. State****,* 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the ***Strickland*** prongs, the proceedings end. ***Neal v. State,*** 525 So.2d 1279, 1281 (Miss.1987); ***Mohr v. State****,* 584 So.2d 426 (Miss.1991).

***Davis v. State****,* 743 So.2d 326, 334 (Miss. 1999), citing ***Foster v. State****,* 687 So.2d 1124, 1130 (Miss. 1996).

¶11.   Turner first argues that his attorneys were ineffective in asking that venue be transferred from Carroll County. Upon the advice of counsel, Turner knowingly waived his right to be tried in Carroll County. In retrospect, Turner now maintains that Carroll County residents and potential jurors likely would have known about his troubled family history and his psychiatric treatments. His unpersuasive argument is that Carroll County jurors might have been more lenient than the jurors of Forrest County.

¶12.   The only case cited by Turner is ***State v. Caldwell***, 492 So.2d 575 (Miss. 1986). In ***Caldwell***, the defendant's death penalty trial was transferred to another county at the defendant's request. He was convicted and sentenced to death. Ultimately, the United States Supreme Court reversed the death sentence and remanded for a new sentencing hearing. Upon remand, Caldwell requested that the hearing be held in the original county. That request was denied by the trial judge. This Court found that Caldwell had the right to be tried in the county where the crime occurred and the fact that he had previously waived that right was not binding, after an appellate court later reversed for a new trial. ***Id***. at 577.

¶13.   ***Caldwell*** is distinguishable, as it did not involve issues of attorney effectiveness. The issue there was whether the defendant had the right to "undo" a previous request to transfer

6

venue from where the crime was committed in a subsequent proceeding. The Court found that he still had the right to be tried in that county. Turner had the right to be tried in Carroll County. However, he waived that right and venue was properly transferred to Forrest County. In the absence of remand, the issue of where he would like to be tried is moot.

¶14. Turner asserts that his attorneys were ineffective in requesting that venue be transferred, but fails to offer proof that would demonstrate that the attorneys' performance was deficient. Any prejudice claimed by Turner is entirely hypothetical. Turner has not shown, and we ponder, how it could be shown, that a Carroll County jury would have found differently. See *Cabello v. State*, 524 So. 2d 313, 317 (Miss. 1988); *Gilliard v. State*, 462 So. 2d 710, 714 (Miss. 1985) (finding that petitioners had shown no prejudice in attorneys' failure to seek transfer of venue).

¶15. Additionally, Turner cannot overcome the presumption that, under the circumstances, seeking a change of venue was sound trial strategy. See *Knox v. State*, 901 So. 2d 1257, 1262 (Miss. 2005)(citing *Stringer v. State* , 454 So. 2d 468, 477 (Miss.1984). In *Wilcher v. State*, 863 So. 2d 719, 750 (Miss. 2003) this Court held that "defense counsel is under no duty to attempt to transfer venue and, therefore, the decision not to would fall within the realm of strategy. We find that, likewise, the decision to obtain a venue change is within the realm of strategy." (Internal citations omitted).

¶16. Turner's attorneys filed a motion in which they alleged that there had been "a great deal of highly prejudicial and adverse pervasive publicity in this case, including both media and word of mouth publicity, making a fair trial impossible." On the day after the murders, the Greenwood Commonwealth printed a story about the crimes with a picture of Turner in

7

handcuffs after his arrest. The attorneys' decision that Turner was more likely to get a better result in another county was more than justified. The question is whether counsel's strategic advice resulted in such a breakdown in the adversarial process so that the conviction and sentence were rendered unreliable. *Stringer v. State*, 454 So.2d 468, 477 (Miss.1984). We find that there were valid strategic reasons for the attorneys' decision to request a change of venue from Carroll County. We find no deficiency in the performance of Turner's attorneys on that claim.

## II. Failure to raise a *Batson* challenge.

¶17. Turner claims that during jury selection, his lawyers should have made a motion pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The record is silent about the racial breakdown of the members of the jury pool. Turner's attorneys did file a pre-trial motion to prevent the State from excluding jurors based on the juror's race. Turner and his accomplice Stewart are white. The murder victims were African-American.

¶18. Once again, the attorneys' performance is presumed to be competent. *Hansen v. State*, 649 So. 2d 1256, 1258 (Miss. 1994), and there is a strong presumption that the attorneys' decisions are reasonable and strategic. *Taylor v. State*, 682 So. 2d at 359, 363 (Miss. 1996). Juror selection depends on strategic considerations. To overcome the presumption of competence, Turner is required to produce more than mere speculation of a *Batson* violation. Turner makes no specific claim as to any individual juror and he offers no specific questionable peremptory challenge utilized by the State. We find that Turner has

8

neither shown that his attorneys were ineffective nor that he was prejudiced as a result of a hypothetical deficiency. Once again, he fails to satisfy either prong of the **Strickland** test.

¶19. Turner cites **Triplett v. State**, 666 So.2d 1356 (Miss. 1995). In **Triplett**, the defendant was convicted of manslaughter. On appeal, this Court determined that his attorney had failed to investigate the evidence and was unfamiliar with the State's witnesses and the scene of the crime, had failed to file a motion to suppress the defendant's statement, had failed to properly challenge jurors for cause, had failed to submit an instruction entailing the defense's theory that the killing had been accidental, and failed to make a **Batson** motion. In sum, the Court found that the attorney had failed to perform "any act basic to the defense of the accused." **Id**. at 1361. The Court concluded that the attorney was ineffective only after "considering the totality of his performance". **Id.** at 1363.

¶20. **Triplett** is clearly distinguishable. There, the attorney was ill-prepared to go forward with trial and the defendant was prejudiced by his attorney's multiple deficiencies. The Court there found a "marked failure of counsel to fulfill his adversarial role" and under the totality of the circumstances, Triplett had not been afforded a fair trial. The failure to make a **Batson** motion was only one factor considered in the overall failure of the attorney to adequately represent his client. This Court has previously distinguished **Triplett**. See **Le v. State**, 913 So.2d 913, 953 (Miss. 2005); **Wilcher v. State**, 863 So.2d 719, 741 (Miss. 2005). **Triplett** is narrowly applied to cases alleging multiple instances of ineffective, deficient conduct by an attorney.

¶21. In **Smith v. State**, this Court held that "[j]ury selection is generally a matter of trial strategy, and an attorney's decision not to make a **Batson** challenge does not amount to

9

ineffective assistance of counsel absent a showing of prejudice to the defendant."(citing *Burns v. State*, 813 So. 2d 668, 676 (Miss. 2002)).

¶22.  Turner has shown no prejudice resulting from his attorneys' decision not to make a *Batson* challenge, even if we presume a basis existed for the exercise of such a challenge.

### III.  Failure to raise severance of the indictment on appeal.

¶23.  Turner was charged in one indictment with two separate capital murders.  Turner was charged with the murder of Eddie Brooks while he and his cohort attempted to rob the first convenience store and with the murder of Everett Curry during a robbery at the second convenience store.  Turner's attorneys moved to sever the charges.  The motion to sever was overruled.  Turner alleges that his attorneys were ineffective in failing to appeal the trial judge's decision not to grant a severance.

¶24.  Miss. Code Ann. § 99-7-2 provides that:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

Rule 7.07 of the Uniform Rules of Circuit and County Court Practice contains similar provisions.

¶25.  At the motion hearing, the State argued that the two murders were part of a common scheme or plan. The State argued that on the night of the murders, Turner and Stewart decided to rob a store.  They drove to the first store and left after deciding that it was too

crowded. They drove straight to the second store which was only four miles away. There, Turner murdered Eddie Brooks. When they couldn't get the cash register open, they went directly back to the first store where Turner murdered Everette Curry. The same guns, masks, vehicle, and modus operandi were involved in the two murders, minutes apart.

¶26. The requirements for multiple counts in a single indictment were discussed at length by this Court in *Eakes v. State*, 665 So. 2d 852 (Miss. 1995). There, the Court held that:

> When a multi-count indictment has been returned and the defendant requests severance, a hearing should be held on the issue. *Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991). 'The State bears the burden of a prima facie showing that the offenses are within the language of Miss. Code Ann. § 99-7-2 (1994), which allows multi-count indictments.' *Corley,* 584 So. 2d at 772. If this burden is met by the State, the defense 'may rebut by showing that the offenses were separate and distinct acts or transactions.' *Id.* The trial court should consider the time period between the offenses, whether evidence proving each offense would be admissible to prove the other counts, and whether the offenses are interwoven. *Id.* 'If this procedure is followed, this Court will give deference  to the trial court's findings on review, employing the abuse of discretion standard.' *Corley*, 584 So. 2d at 772.

*Eakes*, 665 So. 2d at 861. *See also McCarty v. State*, 554 So.2d 909, 915-16 (Miss. 1989).

¶27. At the hearing, the defense argued that the two incidents were separate. The State maintained that the murders were part of the same scheme. The murders took place during the execution of Turner and Stewart's common plan to commit robberies. The time frame involved was approximately twenty minutes. Much of the evidence at trial related to both crimes. Clearly, the two murders were interwoven. The trial court did not abuse its discretion in its decision not to sever the counts. Accordingly, the attorneys' failure to raise that issue on appeal is of no consequence.

11

¶28.    Turner's reliance on *Flowers v. State*, 773 So.2d 309 (Miss.2003) is misplaced. There, this Court's reversal was based not on the failure to sever multiple counts, but rather on the State's introduction of evidence of other murders, while trying the defendant on a single indictment.

### IV.    Failure to raise on appeal the question of whether the district attorney's closing argument amounted to an improper comment on the defendant's failure to testify and call witnesses.

¶29.    Turner called no witnesses during the guilt phase of the trial. In closing argument, Turner's attorney argued that the case boiled down to the credibility of Stewart. Turner also argued that the State should have called more witnesses, including people who were at the second store during the Curry killing. During his closing argument, the District Attorney responded:

> We put on 17 witnesses. On one hand the Defense counsel says we shouldn't have put on but one. On the other hand, they say we should have put on more. We put on the witnesses that we thought y'all needed to hear to make your decision. We could have probably put on forty witnesses, but why? We wanted to make sure that you had the facts that you needed to have. And one thing I want to make sure that y'all understand; both sides have the right to subpoena witnesses, and you can bet if there was anything that was inconsistent, they would have put these other witnesses on. They had the right to do that.

At that time, the defense objected, asserting that the prosecutor's argument amounted to a comment on the defendant's failure to testify and impinged on the defendant's right to remain silent. The trial judge overruled the objection and instructed the District Attorney to stick to the evidence. Turner claims that the prosecutor's statement was an improper comment on Turner's decision not to testify. Turner maintains that this issue should have been raised on direct appeal and that his attorney on appeal was ineffective for failing to raise that claim.

12

¶30.    Turner cites ***Griffin v. California,*** 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), ***Griffin v. State,*** 557 So.2d 542 (Miss. 1990), and other cases which hold that a defendant's Fifth Amendment right against self-incrimination is violated if the prosecutor makes a comment about or alludes to the defendant's failure to testify at trial.  This Court has repeatedly held that attorneys on both sides are allowed wide latitude in their closing arguments and that there is an obvious difference between a comment on the defendant's failure to testify and a comment on defendant's failure to put on a credible  defense. ***Underwood v. State***, 919 So. 2d 931, 939-40 (Miss. 2005) (citing ***Howell v. State***, 860 So.2d 704, 751-52 (Miss. 2003).   The prosecutor's comment here was a fair response to the defense's claim that the State failed to call some witnesses who could have been helpful to the jury.  As in ***Underwood***, the argument did not specifically mention the defendant or refer to his failure to testify.  As the closing argument was not improper, the appellate attorney was not required to raise that issue on appeal.  We find that the attorney was not ineffective in failing to raise this issue on direct appeal.

**V.    Presentation of the lesser-included offense issue on appeal.**

¶31.    At trial, the defense offered jury instructions on the lesser-included offense of simple murder.  The State objected on the basis that there was no evidentiary basis for a finding of simple murder on either count.  The trial court refused the instruction.  On direct appeal, Turner argued that the trial court erred in refusing a simple murder instruction.  This Court considered that issue and analyzed the criteria for giving a lesser-included offense instruction.  The Court found that:

no error was committed by the trial judge in denying the lesser included offense charge of simple murder. The facts from the record simply do not support that theory of the case. The testimony of Stewart - the same testimony Turner relies upon as the basis of his argument for the lesser included offense of simple murder instruction - clearly details how the intent and purpose of Turner in the early morning hours of December 13, 1995, was to rob a store. This testimony from Stewart as to intent was uncontradicted by any other testimony. Therefore, taking this uncontradicted testimony as true, it was Turner's specific intent throughout the events of those early morning hours, up to and including the times of both murders, to commit armed robbery.

*Turner*, 732 So. 2d at 949.

¶32. Turner argues that his attorney was ineffective in failing to argue in the appellant's reply brief that Stewart's testimony was subject to extensive cross-examination and that the testimony was not uncontradicted. Whether Turner was entitled to a lesser-included offense instruction has been addressed and is now barred from further consideration. Miss. Code Ann. § 99-39- 21(2); *Lockett v. State*, 614 So. 2d 888, 893 (Miss. 1992).

¶33. Turner now asserts that this Court would have reached a different result if his attorney had properly addressed it in the reply brief. The claim, in essence, is that the attorney should have argued in the reply brief that Stewart was cross-examined extensively and that his testimony was not "uncontradicted." We find this claim to be without merit.

¶34. This plea relies on a false presumption, i.e., this Court failed to fully review Stewart's testimony, including his cross-examination. All testimony was reviewed in detail. No contradictions were found then, and, after a second review, we again find that Stewart's testimony was uncontradicted. Turner alludes to no specific testimony where Stewart said anything other than that he and Turner planned to rob a store with rifles, and that Curry and

14

Stewart were murdered in furtherance of that armed robbery plan. No lesser included offense instruction was warranted. No amount of argument could change that fact.

## VI. Evidence of mitigation.

¶35. Turner claims that his attorneys failed to present an adequate case in the mitigation phase of his trial. The defense called four witnesses. The petitioner claims that several more witnesses should have been called; and that the witnesses who did testify should have been better prepared.

¶36. Generally, an attorney's decision to call certain witnesses and ask certain questions "falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Bell v. State*, 879 So.2d 423, 434 (Miss. 2004) (quoting *Jackson v. State*, 815 So.2d 1196, 1200 (Miss. 2002)). There is no absolute requirement to put on mitigation witnesses, and the "failure to present a case in mitigation during the sentencing phase of a capital trial is not, per se, ineffective assistance of counsel." *Williams v. State*, 722 So.2d 447, 450 (Miss. 1998), citing *Williams v. Cain*, 125 F.3d 269, 277 (5th Cir. 1997). The fact that an attorney's strategic choices did not result in a good outcome is not in and of itself definitive evidence of ineffective assistance of counsel. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003) (collecting cases).

¶37. Further, this Court has held that:

> *Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case. Both conclusions would interfere with the "constitutionally protected independence of counsel"

15

at the heart of *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674. We base our conclusion on the much more limited principle that "strategic choices made after less than complete investigation are reasonable" only to the extent that "reasonable professional judgments support the limitations on investigation." *Id*., at 690-691, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674. A decision not to investigate thus "must be directly assessed for reasonableness in all the circumstances." *Id.* at 691, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674. *Wiggins*, 539 U.S. at 533, 123 S. Ct. 2527. Under *Wiggins*, counsel may make strategic decisions to introduce, pursue or ignore certain evidence, but these decisions may amount to ineffective assistance if made based on an inadequate or unreasonable investigation.

*Byrom v. State*, 927 So. 2d 709, 716-17 (Miss. 2006).

¶38.     Of the witnesses the defense called in the penalty phase, three were family members who testified about the difficult childhood Turner had experienced.  Their testimony included the following: (1) Turner's father was killed in an accident when Turner was twelve years old; (2)  Turner's mother drank excessively; (3) and (4)  she and her second husband physically and verbally mistreated Turner and his brother, and neglected them badly; (5) Turner's suicide attempts; (6) his disfigurement caused by shooting himself in the jaw; (7) Turner had been institutionalized for psychiatric problems on several occasions without benefit; (8) Turner had been a loving child; (9) he had made good grades; and (10) he had always been kind and respectful to family members.

¶39.     Finally, the defense called Dr. Rodrigo Galvez, a psychiatrist.  Dr. Galvez testified that he had reviewed Turner's voluminous psychiatric records and concluded that Turner had been involuntarily committed to psychiatric hospitals on three occasions.  He was diagnosed as suffering from major depression, borderline personality disorder and substance abuse problems.  Prozac was prescribed for the depression, but Dr. Galvez testified that the personality disorder had never been treated.  Dr. Galvez attributed Turner's problems to

16

Turner's parents and to society in general. Dr. Galvez opined that as a result of Turner's raising and his psychiatric problems, Turner was left with inadequate "moral brakes" to control his behavior. Coupled with alcohol and drug use, the lack of "brakes" led Turner into serious crimes. Dr. Galvez testified that, in his opinion, Turner never got the psychiatric care that he really needed.

¶40. Turner asserts that defense counsel failed to perform more than a cursory investigation of Turner's background prior to presenting the mitigation case. However, the record reveals that the defense interviewed numerous witnesses and reviewed Turner's extensive medical and psychiatric files. We find no evidence that defense counsel's pre-trial investigation was insufficient.

¶41. Turner has submitted affidavits from numerous family members who did not testify at trial. Much of the proposed testimony in those affidavits is repetitive of what was presented to the jury. The jury received testimony about Turner's mother's alcohol problems and the abuse suffered by Turner as a child. Further testimony about Turner's difficult childhood, his suicide attempts, his disfigurement, or the death of his father would only have been cumulative. We find that the lawyers were well within their discretion not to call these additional witnesses.

¶42. After a review of the remaining non-cumulative testimony, we find that Turner has failed to show any deficiency in his attorneys' performance. Claims that additional witnesses should have been called are disfavored. *See **Leatherwood v State***, 473 So.2d 964, 970 (Miss. 1985). The record reveals that the attorneys interviewed many family members in addition to those called at trial. Those who were deemed to be the most effective witnesses by

17

counsel were called and testified for Turner. The decision not to call the remaining witnesses falls within the range of trial strategy, and we find that the attorneys were not ineffective in making that choice.

¶43. Under the totality of the circumstances here, the Court finds that Turner has not shown that the attorneys were ineffective.

### VII. Failure to object to allegations of prior bad acts brought out in cross-examination of mitigation witnesses.

¶44. Turner argues that his attorneys were ineffective in the presentation of the mitigation case by "opening the door" to evidence of prior instances of bad conduct. The State cross-examined Turner's mitigation witnesses, who had testified that Turner had been a good child, by inquiring whether they knew that Turner had assaulted his mother and stepfather. On direct appeal, this Court found that Turner placed his character into evidence by calling witnesses who testified that he had been a good child. The Court found that the State was entitled to rebut that testimony by presenting evidence that Turner was the abuser and not the abused, at least on a couple of occasions. *Turner,* 732 So.2d at 950.

¶45. Turner maintains that his attorneys could have presented the evidence of abuse without opening the door to the prior bad acts testimony. He cites *Woodward v. State*, 635 So.2d 805 (Miss. 1993). In *Woodward*, the Court found that the defendant's attorneys had been ineffective in their presentation of the mitigation case. The defense called a psychiatrist to testify about Woodward's mental illness. Out of fear that they would open the door to damaging character evidence, the defense limited the psychiatrist's testimony to the results of mental testing. The psychiatrist was not allowed to provide critical information about

18

Woodward's history which apparently contributed to his mental problems which had been revealed in the psychiatrist's examination of Woodward. The Court held that counsel had improperly limited the testimony and that Woodward had been prejudiced as a result.

¶46. Turner claims that *Woodward* is indistinguishable. We find otherwise. *Woodward* holds that the attorneys who called the psychiatrist should have allowed him to give a complete picture of the results of his examination of the defendant including critical background history. That failure, coupled with an inadequate closing argument that failed to address the statutory mitigating factors, amounted to ineffective assistance. Here, there is no allegation that Turner's general background was not provided to the jury. The defense called the family members and Dr. Galvez who testified extensively about Turner's history. Further, there is no claim involving inadequate closing argument.

¶47. Turner argues that counsel could have put on the good character evidence without risking cross-examination about the bad character proof. He offers no authority to explain how counsel could have accomplished that. On one hand, Turner claims that his attorneys should have put on more character evidence witnesses, yet on the other, he argues that his attorneys were ineffective in failing to limit character evidence, so as to preclude opening the door to the bad acts questioning. We find no evidence in the record that counsel were ineffective in their presentation of the case in mitigation.

### VIII. Failure to move for a mistrial when the district attorney questioned mitigation witnesses about alleged bad conduct of the defendant.

¶48. Turner maintains that his attorneys should have requested a mistrial when the district attorney asked defense witnesses if they were aware of allegations that Turner had beaten his

19

mother and threatened his stepfather. Turner argues that the questioning was improper in that the State never offered proof that the damaging allegations were true. He claims that counsel were ineffective in failing to cite *Flowers v. State*, 773 So. 2d 309 (Miss. 2000). The State points out that the *Flowers* decision was handed down after Turner's case was decided by this Court. Citing *Flowers*, therefore, would have been impossible.

¶49.    We again note that this Court dealt with the same issue on direct appeal. The Court found that Turner had put his character into play by introducing evidence that he was a good and normal child. The Court found that the State was authorized to rebut that testimony with evidence of bad conduct. *Turner*, 732 So.2d at 950. As the Court has already found that the questions were permissible, Turner cannot show that his attorneys were ineffective in failing to seek a mistrial on that issue.

IX.    **The death sentence imposed by the jury was based in part on facts not specifically found by the jury.**

¶50.    The State chose to present to the jury one aggravating factor justifying the death penalty. The State asked the jury to return a sentence of death if it found that the murders were committed for pecuniary gain and if the aggravating factors outweighed the evidence in mitigation. The State did not ask that the jury be instructed on other statutory aggravating factor. However, the State did argue in its closing statement in the penalty phase that the killings were "brutal and gruesome". Turner argues that the State's argument about the brutality of the crime allowed the jury to return its verdict on evidence outside the pecuniary gain aggravating factor. Turner claims that the sentencing was therefore based on proof outside that found by the jury and that the sentence must be voided under the United States

20

Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct 2348, 147 L.Ed.2d 435 (2000); *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and *Blakeley v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Turner's direct appeal was decided in 1999 before the decisions in *Apprendi*, *Ring* and *Blakeley* were handed down. The State argues that no federal court has applied *Apprendi* and its progeny retroactively. We conclude that *Apprendi*, *Ring* and *Blakely* do not apply here.

¶51. Turner also claims that the State's arguments about the brutality of the offense were prohibited by various Mississippi decisions. See *Walker v. State*, 740 So.2d 873 (Miss. 1999); *Balfour v. State*, 598 So.2d 731 (Miss. 1992). This issue was decided on direct appeal. The Court determined that the State was entitled to "present the detailed circumstances of the murder committed by the defendant" and that the State could "argue these facts and draw inferences from the facts in order to prove that Turner actually killed, attempted to kill, intended the killing take place or that deadly force was contemplated." *Turner,* 732 So.2d at 955-56. Accordingly, this issue is without merit.

### X. Proportionality review in the direct appeal.

¶52. Turner claims that this Court's review of the proportionality of the death sentence on direct appeal was inadequate. He claims that few other Mississippi death penalty cases involve circumstances in which the jury was asked to find only one statutory aggravating factor. Miss. Code Ann. § 99-19-105(3) requires this Court to review the proportionality of each death sentence before that sentence can be affirmed. In the direct appeal, this Court conducted the statutorily mandated proportionality review and found as follows:

21

> It does not appear that Turner's death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. Neither does it appear, upon comparison to other factually similar cases where the death sentence was imposed, that the sentence of death is disproportionate in this case. Having given individualized consideration to Turner and the crimes in the present case, this Court concludes that there is nothing about Turner or his crimes that would make the death penalty excessive or disproportionate in this case.

*Turner*, 732 So.2d at 956. To the extent that Turner asks this Court to analyze the proportionality of the sentence of death again, the Court finds that that issue has already been decided and is procedurally barred. In post-conviction relief proceedings, "[t]he doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal." Miss. Code Ann. § 99-39-21. Notwithstanding the procedural bar, the Court once again finds that the sentence imposed is not disproportionate. In his course of robbing two stores, Turner killed two men without provocation. Both men were shot in the head at close range during robberies. The jury's finding that the murders were done for pecuniary gain is unequivocal. A jury, properly instructed after hearing the evidence, freely determined that Turner's punishment should be death. A review of relevant Supreme Court decisions in other capital cases confirms that the punishment here is proportionate.

## CONCLUSION

¶53. Turner murdered Eddie Brooks and Everett Curry during the course of two robberies. After considering the evidence against him and the competing mitigating and aggravating factors, a jury determined that he should be put to death. The Court finds no error requiring alteration of that judgment. Turner is twice guilty of capital murder. He has not demonstrated any deficient performance by his trial or appellate attorneys. The Court finds

22

that Turner is not entitled to seek post-conviction relief. Therefore, Turner's request for post-conviction relief is denied.

¶54. **THE PETITION FOR POST-CONVICTION RELIEF AND THE PRO SE PETITION FOR POST-CONVICTION RELIEF ARE DENIED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DIAZ, CARLSON, GRAVES AND DICKINSON, JJ., CONCUR.**