GRIFFIS, J„
for the Court.
MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. The motion for rehearing is denied. The original opinion is withdrawn. This opinion is substituted.
¶ 2. This is the appeal of a Rankin County Youth Court order that adjudicated A.J.M. to be a sexually abused child and directed that the alleged perpetrator, J.B.G., have no contact with the child. On appeal, E.J.M., the mother of A.J.M., asserts that the youth court erred: (1) in not *578 granting her motion to dismiss for lack of jurisdiction and venue, (2) in rendering an adjudication without evidence that had been formally admitted at an adjudicatory hearing, (3) in not appointing a guardian ad litem or an attorney for the child, and (4) because the State did not meet its burden of proof for an adjudication that A.J.M. had been sexually abused. We find no reversible error and affirm.
FACTS
¶ 3. On November 30, 2001 and September 30, 2002, the Rankin County Attorney filed separate pleadings entitled, “Petition for Child to be found Sexually Abused.” The November 30, 2001 petition alleged that A.J.M. was sexually abused by J.B.G. on June 1, 2001. The petition asked the Rankin County Youth Court to adjudicate A.J.M. to be a sexually abused child, within the purview of the Mississippi Youth Court Law. Miss.Code Ann. §§ 43-21-101 — 755 (Rev.2000), and enter a “no contact order” against J.B.G.
¶ 4. The September 30, 2002 petition was similar. It stated that at a hearing held in December of 2001, the youth court continued the consideration of the matter until the Rankin County Grand Jury considered and reported a bill of indictment.[1] The petition simply indicated that the indictment had been returned and the previous petition filed in youth court was ripe for consideration.
¶ 5. At one time, J.B.G. was E.J.M.’s attorney. J.B.G. and E.J.M eventually began a romantic relationship. Through this relationship, J.B.G. was exposed to and came in contact with A. J.M.
¶ 6. J.B.G. is alleged to have sexually abused A.J.M. During several interviews with licensed professional counselors with the Mississippi Children’s Advocacy Center, Inc., A.J.M. reported two occasions that J.B.G. sexually abused her. First, on April 23, 2001, J.B.G. transported A.J.M. to the home of her grandmother. While there, AJ.M.’s grandmother observed J.B.G. fondling A.J.M. During the interviews, A.J.M. reported that J.B.G. put his hand under her pants and on her buttocks. The second incident occurred while A.J.M. was swimming with J.B.G. at the Ross Barnett Reservoir. During the interviews, A.J.M. stated that J.B.G. placed his hand under her swimsuit while they were swimming.
¶ 7. The allegations of sexual abuse were referred to the Children’s Advocacy Center by Vicki Curry, an investigator with the Hinds County Sheriffs Department. On May 22, 2001, Curry contacted the Rankin County Sheriffs Department and reported the incident that occurred at the Ross Barnett Reservoir in Rankin County.
¶ 8. On Thursday, October 25, 2001, Chad Callender, an investigator with the Rankin County Sheriffs Department filed a complaint in the interest of A.J.M. with the Rankin County Youth Court Intake Unit. On October 30, 2001, Paul Bowen of the Rankin County Youth Court Intake Unit filed an intake recommendation that proceedings be commenced in Rankin County.
¶ 9. A hearing was held on November 7, 2002. At the beginning of the hearing, E.J.M.’s attorney moved for the court to dismiss the case for lack of jurisdiction and venue. The court denied the motion, adjudicated A.J.M. to be a sexually abused child, and ordered no contact whatsoever between A.J.M. and J.B.G. The youth court judge determined that the only issue that the Rankin County Youth Court had *579 jurisdiction over was the adjudication and the enforcement of the no contact order.
STANDARD OF REVIEW
¶ 10. This Court’s standard of review of a youth court cases is limited. If the evidence so considered is opposed to the finding of the youth court with such force that reasonable men could not have found as the youth court did by a preponderance of the evidence, this Court must reverse. Collins v. Lowndes County Pub. Welfare Dep’t, 555 So.2d 71, 72 (Miss.1989). However, if there is substantial evidence in the record supporting the adjudication of the youth court, evidence of such quality and weight that, even under the “beyond a reasonable doubt” standard, the youth court might reasonably have ruled as it did, we must affirm. In re M.R.L., 488 So.2d 788, 790-91 (Miss.1986).
ANALYSIS
I. Whether the court erred in not granting the appellant’s motion to dismiss for lack of jurisdiction and * venue.
¶ 11. The youth court judge denied E.J.M.’s motion to dismiss for lack of jurisdiction and venue. E.J.M.’s brief does not address the issue of the youth court’s jurisdiction. Therefore, neither will we. Instead, E.J.M.’s brief argues that venue was not proper in Rankin County. She contends that since the petitions identified A.J.M.’s custodian as her grandmother, who resided in Hinds County, venue was not proper under Mississippi Code Annotated Section 43-21-155 (Rev.2000).
¶ 12. The youth court judge disagreed and found venue to be proper in Rankin County. The court found that it had both jurisdiction and venue, “based upon the occurrence having taken place in Rankin County, the child being in Rankin County at the time of the occurrence and in the interest of judicial economy seeking to prevent any further delay and to finally conclude all pending issues regarding this child.” We disagree with the youth court judge’s reasoning but not with his ultimate finding that venue was proper.
¶ 13. Venue for youth court proceedings is set forth in Mississippi Code Annotated Section 43-21-155 (Rev.2000), which provides:
(1) If a child is alleged to be a delinquent child or a child in need of supervision, the proceedings shall be commenced in any county where any of the alleged acts are said to have occurred. After adjudication, the youth court may, in the best interest of the child, transfer the case at any stage of the proceeding for disposition to the county where the child resides or to a county where a youth court has previously acquired jurisdiction.
(2) If a child is alleged to be an abused or neglected child, the proceedings shall be commenced in the county where the child’s custodian resides or in the county where the child is present when the report is made to the intake unit.
¶ 14. The.Mississippi legislature has established different criteria for venue in cases involving a delinquent child as opposed to an abused or neglected child. For a delinquent child, the county where the delinquent acts occurred has venue for the initial adjudication of delinquency, subject to subsequent transfer. For an abused or neglected child, as is the case here, subsection (2) is applicable.
¶ 15. Under subsection (2) the location of the occurrence of the abuse or neglect does not determine venue. Instead, venue is proper in the county where the child’s custodian resides or in the county where the child is when the report is filed.
*580 ¶ 16. We examine the record to determine whether the Rankin County Youth Court had venue based on the residence of A.J.M.’s custodian. However, we find the record is clear that A.J.M’s custodian was her grandmother, Imogene Clark. Ms. Clark resided in Hinds County. E.J.M. lived in Rankin County.
¶ 17. E.J.M. argues that Ms. Clark was AJ.M.’s custodian when the youth court petition was filed. E.J.M. refers us to an order of the Chancery Court of Hinds County, dated December 6, 2001. This order indicates that the custody of A.J.M. was subject of a proceeding in the First Judicial District of Hinds County, Mississippi, before the Chancellor Denise Owens. The order indicates that Ms. Clark filed an “Emergency Petition for Custody and/or Guardianship” in the chancery court, on May 7, 2001. The chancellor granted this petition on May 7, 2001. Thereafter, the chancellor entered an order extending the emergency custody on May 29, 2001.
¶ 18. From the record, it is clear that, in May of 2001, the Hinds County chancellor found E.J.M. unfit to have custody of A.J.M. and granted primary care and custody of A.J.M. to her grandmother, Ms. Clark. Both petitions filed in the youth court indicate that Ms. Clark was the custodian of A.J.M.
¶ 19. Mississippi Code Annotated Section 43-21-105(g) (Supp.2003) provides, “ ‘Custodian’ means any person having the present care or custody of a child whether such person be a parent or otherwise.” When the petitions were filed, Ms. Clark, a resident of Hinds County, was AJ.M.’s custodian. Based on the clear wording of Mississippi Code Annotated Section 43-21-155(2) (Rev.2000), venue in the Rankin County Youth Court could not be based on the residence of A. J.M.’s custodian.
¶20. Next, we examine the record to determine whether the Rankin County Youth Court had venue based on the presence of A. J.M. within the county when the report was made to the intake unit. The report to the youth court intake unit was made on Thursday, October 25, 2001, by Chad Callender, an investigator with the Rankin County Sheriffs Department. The record presented to this Court included a document entitled, “Mississippi Department of Youth Services, Face Sheet,” dated November 30, 2001. This document indicated that A.J.M. was attending school in Rankin County when the report was made to the Rankin County Youth Court Intake Unit. This evidence is sufficient to determine that A. J.M. was present in Rankin County when the report was made to the youth court intake unit. Therefore, under the second part of Mississippi Code Annotated Section 43-21-155(2) (Rev. 2000), we find sufficient evidence to determine that it was not reversible error for the Rankin County Youth Court to determine that venue was proper in Rankin County.

II. Whether the court erred in rendering an adjudication without evidence that had been formally admitted at an adjudicatory hearing.

¶ 21. E.J.M. argues that the youth court erred by relying on the report made by the court appointed special advocate and the attached exhibits, including the reports of the incident to Rankin County Sheriffs Department and various interviews of the child by the Children’s Advocacy Center. She argues that because the report was not formally admitted into evidence it was improper for the court to rely on the report in rendering its decision. In support of this contention, E.J.M. cites Mississippi Code Annotated Section 43-21-559(1) (Rev.2000), which provides:
In arriving at its adjudicatory decision, the youth court shall consider only evi *581 dence which has been formally admitted at the adjudicatory hearing. All testimony shall be under oath and may be in narrative form. In proceedings to determine whether a child is a delinquent child or a child in need of supervision, the youth court shall admit any evidence that would be admissible in a criminal proceeding. In proceedings to determine whether a child is a neglected child or an abused child, the youth court shall admit any evidence that would be admissible in a civil proceeding.
¶ 22. In admitting the reports, exhibits and interviews of A.J.M. in lieu of live testimony, the youth court judge noted his concern that A.J.M. had already been required to relate the details of the sexual abuse too many times. Prior to its ruling, the court asked E.J.M.’s counsel whether E.J.M. wanted to take live testimony and subject the child to another examination. After discussing the matter with E.J.M., E.J.M.’s counsel advised the court that E.J.M. had no desire for A.J.M. to be subjected to live testimony. The only concern that E.J.M.’s counsel voiced was that E.J.M. had not been interviewed by any of the agencies involved in the report, except the Rankin County Department of Human Services.
¶ 23. Our courts have consistently held that “[a] trial judge will not be found in error on a matter not presented to him for decision.” Jones v. State, 606 So.2d 1051, 1058 (Miss.1992). Based on the record, we find that E.J.M. failed to make a contemporaneous objection to the decision to rely on the reports, exhibits and interviews of A.J.M. Since no such objection was made, we are precluded from considering the issue on appeal. Smith v. State, 572 So.2d 847, 848 (Miss.1990); Burney v. State, 515 So.2d 1154, 1156-57 (Miss.1987).

III. Whether the court erred in not appointing a guardian ad litem or an attorney for the child.

¶ 24. E.J.M. asserts that the court failed to appoint a guardian ad litem or an attorney to represent A.J.M. The record reveals that the youth court judge discussed certain aspects of the case with both A.J.M.’s guardian ad litem and her appointed counsel. The record also contains multiple references to the appointment of both a guardian ad litem and counsel. Accordingly, we find this issue to lack merit.

IV. Whether the State failed to meet its burden of proof for an adjudication that the child had been sexually abused.

¶-25. E.J.M. alleges that the State failed to meet its burden of proof because the reports the court relied on in rendering its decision were never admitted as testimony. E.J.M. asserts the statements A. J.M. gives in the report are inconsistent and were elicited by leading and suggestive questioning. E.J.M. complains that she was unable to cross-examine or to challenge the authenticity of the reports. She claims that there is no indication that the touching was sexual.
¶26. As discussed above, the judge asked E.J.M. if she had any objection to admitting the court appointed special advocate’s report and attached reports in lieu of live testimony. Her counsel responded in the negative. Neither E.J.M. nor her counsel raised any objection regarding their inability to cross-examine any witness. At no time did E.J.M. or her counsel make any evidentiary objections regarding the report being admitted in lieu of live testimony. Given the failure to make contemporaneous objections in regard to these issues, this Court is precluded from addressing the issues on appeal. Smith, *582 572 So.2d at 848 (Miss.1990); Burney, 515 So.2d at 1156-57 (Miss.1987).
¶ 27. After reviewing the reports in the record the judge, sitting as the trier of fact, found the reports and A.J.M.’s statements as credible and found that there was ample proof to adjudicate the minor a sexually abused child, within the purview of the Youth Court Law. Applying the standard of review, we find that the record contained substantial evidence that a court might reasonably have ruled A.J.M. to be a sexually abused child. Accordingly, we find this assignment of error to be without merit and affirm the judgment of the Rankin County Youth Court.
¶ 28. THE JUDGMENT OF THE YOUTH COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ„ CONCUR.

. According to the record, the Rankin County Grand Jury returned a true bill of indictment against J.B.G. A condition of J.B.G.'s bond required that he have no contact with A.J.M.