WILSON, J.,
for the Court:
¶ 1. The Jackson County Youth Court adjudicated Elizabeth Grant[1] to be a sexually abused child.[2] Elizabeth had intimated to a classmate that her stepfather, Phil Lewis, had touched her inappropriately. Phil is married to Elizabeth’s mother, Betty Lewis. As a result of Elizabeth’s accusation, the Jackson County Department of Human Services (DHS) took custody of Elizabeth, Elizabeth’s younger brother, and Betty’s niece.' After an investigation, the Jackson County Youth Court Intake Unit recommended filing a formal petition to adjudicate Elizabeth to be a sexually abused child.
¶ 2. After hearing testimony from Elizabeth, Betty, and a DHS worker, the youth court adjudicated Elizabeth .to be a sexually abused child. Betty appeals and argues that the youth court’s ruling lacks sufficient evidentiary support. She also claims that several of the court’s evidentiary and procedural rulings amount to reversible error. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. In February 2013, thirteen-year-old Elizabeth told a classmate that her stepfather, Phil Lewis, had sexually abused her. The friend informed a teacher, who in turn *766 told other school officials, who then notified Jackson County DHS. DHS filed a request with the youth court to order the child into DHS custody,-which was granted, and DHS removed Elizabeth from the physical custody of her mother, Betty Lewis, along 'with Elizabeth’s younger half-brother and Betty’s niece, who then lived with the family.[3]
¶4.- After the children were removed from Betty’s home, the youth court appointed a guardian ad litem (GAL) to represent Elizabeth’s best interests. .The judge also entered a shelter order placing physical and legal custody of Elizabeth with DHS. The order also called for Dr. J. Donald Matherne to perform psychological evaluations of Elizabeth and Betty. On March 1, 2013, the youth court entered an intake order, which recommended that the State file a formal petition to bring forward the ■ sexual. abuse allegations. On March 5, the State filed a formal petition to adjudicate Elizabeth as sexually abused.
¶ 5. A full evidentiary hearing (an adjudication hearing) was set for June 12,2013. When the parties appeared for the hearing, the State requested a continuance because Elizabeth was having “a meltdown” and was unable to testify due to her emotional state. Betty opposed a continuance, arguing that it would only prolong the separation between her and her children, but the judge granted a continuance, finding that it would be in Elizabeth’s best interest.
¶ 6. On September 10, 2013, the hearing began with Elizabeth’s testimony. She was -the only 'witness that day, and the hearing was continued until November to allow Betty’s attorney to finish his cross-examination. At the November hearing, Betty requested that Dr. Matherne, her proposed expert witness, be allowed to sit in the courtroom for the remainder of Elizabeth’s testimony in order to observe her. Upon objection by both the State and the GAL, the judge - declined to allow Dr. Matherne to remain in the courtroom, as it was “not in the interest of justice ■.,. for [Dr. Matherne] to only hear the last little bit of cross-examination, ... having not heard the first three hours.” After Elizabeth’s testimony- concluded, the court heard testimony from a DHS family protection worker who testified regarding the statements Elizabeth -made about the alleged sexual abuse. The hearing was ‘continued again to allow the State the opportunity to locate a former Child Advocacy Center employee who had conducted a forensic interview of Elizabeth.
¶7. On April 9, 2014, the hearing resumed. Betty’s attorney noted that, he had. not subpoenaed Dr, Matherne for .that day but that he intended to call him to testify at a later date. Betty requested that Dr. Matherne be allowed to study a transcript of Elizabeth’s testimony, which the judge allowed, with the understanding that Betty would be responsible for paying for the cost of the transcript and any fees that Dr. Matherne charged for reviewing it, The judge also noted that Betty would be responsible for Dr. Matherne’s witness fees since he was her witness, not the State’s. The judge further warned that if Betty wanted to introduce Dr, Matherne’s report, he would need to testify in court so that the State could cross-examine him. Finally, the judge noted that Betty would need to issue a subpoena for Dr. Matherne if she wanted him to testify, specifically stating that “he needs to be involved in the scheduling of the next court date if you want him here.” At the conclusion of these preliminary matters, the State rested.
*767 ¶ 8. Once the State rested, Betty moved for a directed verdict, which was denied; Betty then testified and was cross-examined by the State. At the close of Betty’s testimony, Betty’s attorney initially decided not to call Dr. Matherne as a witness and informed the court that Betty would rest. However, when the judge stated that she was not prepared to announce a ruling from the bench, Betty decided to leave her case open until the next hearing date. The judge agreed and directed the parties to schedule the next hearing daté based on Dr. Matherne’s availability.
¶ 9. When the hearing resumed on June 25, 2014, Dr. Matherne was not present, and the judge denied Betty’s motion for a continuance, which she had filed the day before. The judge noted ■ that she had entered an order in April directing Betty to subpoena Dr. Matherne, but Betty failed to do so. Betty’s attorney represented that he had attempted to contact Dr. Matherne repeatedly, and Dr. Math-erne had originally confirmed his * availability for June 25. However, a few'days before the hearing, Dr. Matherne informed Betty’s counsel that he would not be able to testify. The judge declined to continue the case yet again given Betty’s failure to subpoena Dr. Matherne.
¶ 10. Betty then resumed and completed her testimony, at which point she restr ed her case and again requested that Dr. Matheme’s report be admitted into evidence. The judge again denied this request, noting that she had already informed Betty’s attorney that the report would not be allowed into evidence without Dr. Matherne’s testimony. The parties then gave their closing arguments, and the judge took the case under advisement.
¶ 11. On August 18, the judge issued her opinion, finding Elizabeth to be a sexually abused child as defined by section 43-21-105. The judge’s opinion ^included the following factual findings;
[Elizabeth], daughter of [Betty], was 13 years óf age when she made' the allegation- that her step-father, [Phil], sexually abused her in her home in Jackson County,'Mississippi on one or more occasions.
[Betty], Mother and legally responsible for the care of [Elizabeth], did not believe the child’s allegations against the step-father, and throughout the trial stated that [Elizabeth] was not-being truthful. -
[Elizabeth] allegéd 'that hér step-father touched her breast and pubic areas and performed oral sex on the minor on one or more occasions. [Elizabeth] was consistent in her recollection of the time, place and events that happened to her as the result of [Phil’s] conduct.
[Betty] testified tliat she witnesses a great relationship between [Elizabeth], her 13 year old daughter, and [Phil], her husband. She 'testified observing [Phil] rubbing her daughter’s feet, talking to the child for “hours,” that [Elizabeth] was closer to [Phil] than she was to her and to her perception that [Elizabeth] was “never afraid” of [Phil].
[Betty] testified during, trial that [Elizabeth’s] motive for these allegation[s] was that she wanted revenge against her Mother and [Phil] for their interference with the minor’s on-line relationship with a 20 year old -male;- yet, when questioned by the [GAL] at the investigation stage of this case, [Betty] admitted that she did not allege that [Elizabeth] was making tjiis story up to get back at her and [Phil], When questioned she admitted it was later when this theory developed.
[Elizabeth] did not intentionally disclose the allegation of sexual abuse by *768 her step-father, [Phil]; in fact, she told a Mend, then tore up the note.
[Elizabeth] was visibly upset after her forensic interview when she discovered that she would not be allowed to go home. Yet, [Elizabeth] did not recant her statements. When asked why she did not recant, she stated, “because it was true.”
[Elizabeth’s] statement and sworn testimony have remained constant throughout the investigation and trial.
[[Image here]]
[Phil]’s relationship with [Elizabeth], his 13 year old step-daughter, was his efforts at grooming this child for a sexual relationship with himself.
[Elizabeth] has a reported history of mental illness of bi-polar and/or depression which the Court considered, but finds that even if [Elizabeth] has a diagnosed mental illness, it does not negate the fact that she was sexually abused by her step-father, [Phil],
[Betty] failed to recognize the relationship between her husband and her 13 year old daughter as inappropriate.
[Elizabeth] was a credible witness who was consistent in her recollection of the sex acts performed on her by her stepfather.
¶ 12. Betty timely appealed from this ruling and the accompanying judgment.
ANALYSIS
¶ 13. Betty raises six issues on appeal but only three require discussion. First, she claims that the trial court’s finding that Elizabeth was sexually abused lacks sufficient evidentiary support. Second, Betty argues that the youth court erred by excluding Dr. Matherne’s report and by precluding testimony about statements made on Twitter. Third, Betty contends that the youth court committed reversible error by denying her motion for a continuance to permit Dr. Matherne to testify.[4]
¶ 14. This Court’s standard of review on appeal from youth court adjudication hearings is limited. In re L.H., 87 So.3d 1139, 1144 (¶ 22) (Miss.Ct.App.2012) (citing In re A.J.M., 911 So.2d 576, 579 (¶ 10) (Miss.Ct.App.2005)). The youth court judge is the trier of fact, and we will reverse her findings only if the evidence “is opposed to the finding[s] ... with such force that reasonable men could not have found as the youth court did by a preponderance of the evidence^]” Id. (quoting 911 So.2d at 579 (¶ 10)). We review a youth court’s finding of neglect or abuse in the light most favorable to the State. See In re D.O., 798 So.2d 417, 421 (¶ 13) (Miss.2001).
¶ 15. For the reasons outlined below, there is sufficient evidentiary support for the youth court judge’s findings and adjudication. Further, the judge committed no error, much less reversible error, in the evidentiary and procedural rulings that Betty challenges on appeal. We therefore affirm.
I. Sufficiency of the Evidence
¶ 16. Betty argues that the youth court’s ruling was “not supported by sub *769 stantial evidence, [was] manifestly wrong, clearly erroneous, and/or applied an erroneous legal standard.” Betty argues that there is no evidence that the abuse occurred other than Elizabeth’s own statements. Betty further claims that, the judge disregarded evidence of Elizabeth’s “oppositional defiance disorder” (ODD),[5] her propensity to- .lie, her hallucinations and difficulty distinguishing the hallucinations from reality, and evidence of her motive to make false allegations against her stepfather. However, the judge did not disregard these issues, all of which go to Elizabeth’s credibility. Rather, the judge considered the issues but still found Elizabeth credible with respect to the issues of importance in this proceeding. Such credibility determinations are the province of the youth court judge, not an appellate court. See D.O., 798 So.2d at 422 (¶ 17).
¶ 17. ,No doubt, questions were raised at trial regarding Elizabeth’s credibility and motives. , Elizabeth had been diagnosed with ODD and suffered from depression. She admitted bragging to., her friends that she was a good liar. She testified to a variety of vivid and disturbing hallucinations (such as “killer clowns” with “inhuman ... sharp teeth”), and at one time, she thought that she might be possessed by a demon. When asked, “[D]o you believe [the hallucinations], were real?” she answered, “I’m not sure! Í mean, I have a feeling like they were real, but then there’s another part of my mind that’s like no, you’re crazy.” Eventually she testified,that she did know the -difference. between hallucinations and reality.
¶ 18. , Elizabeth also admitted that she was. angry with her stepfather and her mother for ending her online relationship with “Shane.” The online relationship began in 2012, when Elizabeth was only twelve years old. Shane was then, nineteen years old and a self-described “demo-nologist.” Betty .and Phil eventually asked the Jackson County Sheriffs Office to look at fheir computers and Elizabeth’s online accounts to determine whether Shane was violating any laws. The sheriffs office agreed that the -conversations between Elizabeth and Shane were troubling but concluded that Shane had not yet. done anything illegal. Betty and Phil finally put an end- to the relationship by restricting Elizabeth’s internet access. This occurred in late 2012, about two months before Elizabeth accused Phil of abusing her.' Betty believes that Elizabeth falsely.accused Phil in retaliation for ending her relationship with Shane.
¶ 19. Finally, there were some inconsistencies in Elizabeth’s testimony at trial. In response to questions from the youth court prosecutor, Elizabeth testified that her stepfather had only touched and' rubbed her with his hands and that he had not penetrated her. Just a few minutes later, in response to questions from the GAL, she remembered that he had also performed oral sex on her, and- she believed that there had been penetration.
¶ 20.. Elizabeth’s credibility and motives were thoroughly explored at trial on cross-examination and through Betty’s testimony. The trial, judge heard this evidence but found that Elizabeth was telling the truth with respect to .the matters of importance in this case. . In her ruling, the judge concluded that Elizabeth’s allegations that her stepfather had-“touched her breast and -pubic areas and performed oral sex” on her were “consistent in her recollection of the time, place and events that hap *770 pened[,]” and these allegations' “remained consistent throughout the investigation and trial.”[6] The judge also noted that Elizabeth was upset when, after disclosing the abuse, she learned that she would not be allowed to return home; however, when the prosecutor asked her why she had not simply recanted her allegation, she said, “[B]ecauSe it was true.” The judge also acknowledged Elizabeth’s mental health issues:
[Elizabeth] has- a reported history of mental illness of bi-polar and/or depression which the Court considered; but finds that even if [Elizabeth] has a diagnosed mental illness, it does not negate the fact that she was sexually- abused by her stepfather.. [Elizabeth] is without a doubt a troubled child, but' the Court is mindful that it is- the most vulnerable in our society that are usually the victims of abuse..
¶ 21. Thus, it is evident that the judge considered Elizabeth’s credibility and the evidence of her “troubled” mental history. Moreover, no testimony or evidence was presented at the hearing to rebut'Elizabeth’s allegations — only Betty’s belief that Elizabeth was lying because she was angry with Phil. Phil was not called to. testify at the hearing.
¶ 22. In In re D.O., our Supreme Court affirmed a youth court’s finding that two children were sexually abused even though the children’s father (the accused) and mother both testified‘at the hearing, both denied the allegations, and they presented the testimony of a -medical expert who doubted that the abuse had occurred. See D.O., 798 So.2d at 418-22 (¶ 1-17). The evidence of abuse consisted of hearsay testimony that the mother previously admitted the abuse (which" she denied) and the court-appointed medical expert’s opinion that there was strong evidence of abuse. See id. The Supreme Court recognized that determinations of witnesses’ credibility are left to the youth court judge, and the Court found that there was sufficient evidence to support the youth court’s finding. See id. at 422 (¶ 17) (“The trier of fact chose to believe [the court-appbinted expert] over [the parents’ expert], and [a DHS investigator] over the parents. Such is the charge of the fact finder.”).
¶ 23. The youth court judge considered Elizabeth’s mental health issues and possible motives but- found her allegations credible. There is sufficient evidence in the record for a reasonable fact-finder, applying a preponderance-of-the-evidence standard, to have reached that conclusion. This is particularly true given that Phil, who remained married to Betty at the time of the hearing, did not testify. Two people have direct knowledge of whether Elizabeth was sexually abused. Elizabeth testified that she was, and the record contains no corresponding denial. Elizabeth’s testimony is" sufficient to support the youth court judge’s finding. Accordingly, we must affirm. Id.
II. Evidentiary Rulings
¶ 24. Betty claims that the court erred by excluding Dr. Matherne’s psychological report oh Elizabeth ás hearsay and by excluding evidence and' limiting’ testimony related' to Elizabeth’s Twitter account. We address these issues keeping in mind that a “trial judge has broad discretion as to the ádmissibility of evidence.” Dye v. State, 498 Sb.2d 343, 344 (Miss.1986); “Appellate review of determina *771 tions of whether to admit hearsay is limited to whether an'error of law occurred, and if it did not, then appellate review is limited to the abuse of discretion standard.” Shirley v. State, 843 So.2d 47, 48 (¶ 3) (Miss.Ct.App.2002) (citing Baine v. State, 606 So.2d 1076, 1078 (Miss.1992)). We will not reverse based on the exclusion of evidence unless-the trial judge’s ruling was both erroneous and prejudicial. Livingston v. State, 943 So.2d 66, 70 (¶ 10) (Miss.Ct.App.2006).
A. Dr. Matherne’s Psychological Evaluation of Elizabeth
¶25. As discussed above, Betty sought to introduce Dr, Matherne’s report — a psychological evaluation of Elizabeth. The court had ordered Dr. Math-erne to. perform the evaluation-prior to the filing of the formal petition to adjudicate Elizabeth a sexually abused child. However, at the first hearing, the State indicated that it would not call Dr.. Matheme as a witness. Betty’s attorney then subpoenaed Dr. Matherne for the next hearing date, November 25, 2013. Dr. Matherne was present on that day, but the hearing recessed that day before he. was called to testify.
¶26. When the hearing resumed- on April 9,'2014, Dr. Matherne had not been subpoenaed and was -not present. Betty’s attorney asked that Dr. Matherne be allowed to review the transcript of Elizabeth’s testimony and testify at a later date. In response, both the prosecutor and the GAL made clear that they would object to Dr, Matherne’s report being admitted into evidence if he did not testify. The court ruled that Dr. Matherne could review the -transcript of Elizabeth’s testimony and testify at a latelr date. However, the judge also warned, “Dr. Matherne will need to testify live.[H]is report is not in evidence and will not be accepted into evidence over an objection, so he would have to testify live.” Betty’s attorney pointed out that Dr. Matherne’s report was already in the court file, to which the judge responded,
[A] lot of things ... are part of the file — [B]ut that doesn’t mean, it’s in evidence at the trial. So even though it was a court-ordered psychological .evaluation, it is not in evidence and I will not consider it. I haven’t read it and won’t read it unless it is introduced into evidence.... Dr. Matherne would have to be here to do that.
The court then directed , the parties to schedule the next hearing date for a day on which Dr. Matherne would be available to testify. In addition, after the hearing recessed, the court entered an . order stating specifically that the hearing was “continued to June 25, 2014 ... for [Betty’s attorney] to subpoena Dr. Matherne.”
¶27. However, when the hearing resumed on June 25, 2014, Dr. Matherne was not present and had not been subpoenaed. The trial judge denied Betty’s motion to continue, which she had filed the day before. Betty’s attorney represented that he had experienced difficulty getting in touch with Dr. Matheme, but he also admitted that he had not subpoenaed Dr. Matheme. The judge refused to continue the .trial, noting that she had specifically directed Betty to subpoena Dr. Matherne on the last trial date and in her prior order. After Betty’s testimony concluded, she sought once again to introduce Dr. Math-erne’s report. The State objected to the report as hearsay, while Betty argued that it was admissible under Mississippi -Rule of Evidence 803(4) or (8). The judge sustained the objection and excluded the report.
¶28. On appeal, Betty again argues that .the judge committed reversible error because the report was admissible.‘under *772 Rule 803(4) or (8). Betty alternatively claims that hearsay is admissible in youth court proceedings. These arguments are without merit.
¶ 29. Mississippi Rule of Evidence 803(4) provides an exception to the general hearsay rule for statements made for the purpose of medical diagnosis or treatment. It reads:
Statements’ made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term “medical” refers to emotional and mental health as well as physical health.
“There is a two-part test for admitting hearsay statements” under Rule 803(4): “(1) the declarant’s motive in making the statement must be consistent with purposes of promoting treatment; and, (2) the content of the statement must be such as is reasonably relied on by the physician.” S.C. v. State, 795 So.2d 526, 530 (¶ 14) (Miss.2001) (citing United States v. Renville, 779 F.2d 430, 436 (8th Cir.1985); Jones v. State, 606 So.2d 1051 (Miss.1992); Mitchell v. State, 539 So.2d 1366 (Miss.1989) (overruled on other grounds by Derouen v. State, 994 So.2d 748 (Miss.2008))).
¶ 30. In S.C., the youth court ordered Dr. Matherne (the same doctor in this case) to evaluate two children. S.C., 795 So.2d at 528 (¶ 3). Dr. Matherne prepared reports and later testified at a permanency hearing for the children. At the hearing, “[t]he court found the statements from the children recorded in the reports were admissible pursuant to the medical records exception to the hearsay rule.” Id. at 530 (¶ 12). The Supreme Court affirmed the youth court’s ruling, noting that the statements by the children “were used by the doctor in his diagnosis and treatment of the children as directed by the trial court” and “[t]he doctor reasonably relied on those statements in determining a diagnosis and recommending treatment for the daughter and son, and providing the trial court with an independent assessment[.]” Id. at (¶ 15). The Supreme Court also noted that the children and the doctor all “testified ... and were subject to cross-examination.” Id.
¶ 31. Betty cites S.C. in support of her argument that Dr. Matherne’s report in this case was admissible pursuant to Rule 803(4), but S.C. is readily distinguishable. Betty sought to introduce Dr. Matherne’s entire report into evidence, not just specific statements of Elizabeth’s that were recorded in the report. The report does contain some statements by Elizabeth that could conceivably fall within Rule 803(4)’s exception to the hearsay rule, but it also includes Dr. Matherne’s impressions of Elizabeth and opinions regarding her mental health and credibility, which do not fit within the exception. See Rice v. State, 815 So.2d 1227, 1228-29 (¶¶ 4, 19) (Miss.Ct.App.2001) (psychiatrist’s diagnosis and opinions were not admissible under Rule 803(4)); Caswell v. Caswell, 763 So.2d 890, 892 (114) (Miss.Ct.App.2000) (doctor’s letter describing party’s medical condition was not admissible under Rule 803(4)). These are Dr. Matheme’s own statements and opinions, not statements that would be “reasonably relied on by [him]” for purposes of diagnosis and/or treatment. S.C., 795 So.2d at 530 (¶ 14); see also Bombard v. Fort Wayne Newspapers Inc., 92 F.3d *773 560, 564 (7th Cir.1996) (holding that Federal Rule of Evidence 803(4) does not apply to “statements by the person providing the medical attention to the patient”). Betty never isolated or sought to introduce any specific statements of Elizabeth’s. Her primary interest was in Dr. Math-erne’s opinions and, hence, she sought to have the entire report introduced. The youth court judge did not abuse her discretion by excluding, the .report as hearsay.
¶ 32. Moreover, Rule 803(4) provides an exception to.the hearsay rule only “if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness.” M.R.E. 803(4). Betty was unable to make that showing because Dr. Matherne did not testify. In S.C., supra, the Court held that the trial court did not abuse its discretion by allowing Dr. Matherne to testify in part because he “testified concerning the statements [at the hearing] and [was] subject to cross-examination.” S.C., 795 So.2d at 530 (¶ 15). Here, Betty failed to subpoena Dr., Matherne despite being specifically warned and ordered to do so. Because she failed to do so, Dr. Matherne did not testify and was not subject to cross-examination. Therefore, the youth court would have been within its discretion to exclude the report even if it otherwise satisfied Rule 803(4). •
¶ 33. Betty also argues that Dr. Matherne’s report was admissible under Rule 803(8) as a public record or report. Rule 803(8) provides in relevant part:
Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report ... or (C) ... factual findings resulting from an' investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
Specifically, Betty argues that Dr. Math-erne’s report is admissible under (C) as “factual findings resulting from an investigation made pursuant to authority granted by law.” However, Dr. Matherne’s report does not fit this exception to the hearsay rule for at least two reasons. First, it is not a “report[ ] ... of [a ] public office [ ] or agenc[y].” Id. (emphasis added). Dr. Matherne is'a private psychologist; his appointment by the court to evaluate Elizabeth did not transform him into an arm of the State. See United States v. Blackburn, 992 F.2d 666, 672 (7th Cir.1993) (reports prepared by private parties, “even if at the instance of a government.agency,” are not public records or reports for purposes of Federal Rule of Evidence 803(8)). Second, Dr. Matherne’s report contains few, if any, significant “factual findings.” Rather, it reflects his opinions. M.R.E. 803(8) cmt. (“Opinions and conclusions contained in such reports should be excluded.... The rule expressly gives judges the discretion to exclude ... reports [based on hearsay].”). Accordingly, the youth court did not abuse its discretion by refusing to admit the report under Rule 803(8).
¶ 34. Finally, Betty argued in her brief on appeal that hearsay evidence is admissible in youth court if it is relevant and material. However, as Betty’s counsel conceded at oral argument, the rules of evidence, including the hearsay rule, apply in adjudication hearings in youth court. U.R.Y.C.P. 24(b)(3)(ii) (“Adjudication hearings shall be conducted ... under the rules of evidence and rules of court as may comply with applicable constitutional standards[.]”); In re C.B., 574 So.2d 1369, 1371 n. 1 (Miss.1990) (“[In] an adjudication hearing ... evidence is admissible in so *774 far as it is admissible in a civil proceeding. For .an adjudication hearing, ... hearsay evidence would have to be found admissible under [an exception to the ■ hearsay rule].”).[7] Because Betty identified , no ground for admitting Dr. Matherne’s report under the rules of evidence, the youth court’s ruling excluding the report was not an abuse of discretion. ;
B. . Other Hearsay
¶ 35. In her opening brief on appeal, Betty identifies three instances in which the* youth court judge sustained- objections on hearsay grounds when Elizabeth or Betty was asked about-statements that “Shane” or Elizabeth allegedly made on Twitter. Betty claims that these three rulings constitute reversible error. Betty argues, again, that the hearsay rule does not apply in youth court; therefore, she argues, testimony about Twitter statements should have been allowed “even though it was hearsay” because it was “crucial” to her.case. This is the only argument advanced in support of this issue in Betty’s opening brief on appeal. As discussed above, this argument is mistaken. The rules of evidence apply in adjudication hearings. Because Betty concedes that the statements were hearsay, and she identifies no applicable exception to the hearsay rule, this issue is without merit.[8]
III. Motion for a Continuance
¶36. Finally, Betty claims the trial judge erred by denying her motion for a continuance when Dr. Matherne was unavailable for the hearing held on June 25, 2014. The history of this issue is recounted above in connection with the discussion of Dr. Matherne’s reports. In short, on April 9, 2014, the youth court judge told the parties to set the next hearing date for a day when Dr. Matherne would be available, and she instructed Betty to subpoena Dr. Matherne' to testify on that day. The judge warned Betty that Dr. Matherne’s report would not be admitted into evidence or considered if he did not appear to testify. Betty was also on notice that the prosecutor and GAL objected to the admission of Dr. ■ Matherne’s report if he did not testify. Finally, after the hearing recessed, the court entered an *775 order that stated specifically that the hearing was “continued to JUNE 25, 2014 ... for [Betty’s attorney]. to subpoena Dr. Matheme.” (Emphasis added). Based on this history and Betty’s failure to subpoena Dr. Matherne, the court denied her motion for a continuance, which she filed only the day before the hearing.
¶ 37. It is well settled that “the decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice.” Ross v. State, 954 So.2d 968, 1007 (¶ 91) (Miss.2007). A trial judge may deny a motion for a continuance to locate a witness when the moving party failed, without excuse, to subpoena the witness. Triplett v. State, 666 So.2d 1356, 1361 (Miss.1995). This is true “even for friendly, favorable witnesses.” Id. Moreover, it is within a trial judge’s discretion to deny a motion for a continuance that, considering the circumstances, is untimely. See, e.g., Wilson v. State, 716 So.2d 1096, 1099 (¶ 22) (Miss.1998); May v. State, 569 So.2d 1188, 1190 (Miss.1990). ‘Here, Betty argues that her attorney did not learn of Dr. Matherne’s unavailability until the day before the hearing; however, this is due only to Betty’s failure to subpoena Dr. Matheme and communicate with him during the eleven weeks between the hearing’s recess on April 9, 2014, and its continuation on June 25, 2014. Betty was instructed to select a hearing date on which Dr. Matherne would be available and to subpoena him for that date. She failed to do so. Under the circumstances, the youth court judge did, ,not abuse her discretion by denying the motion for a continuance.
CONCLUSION
¶ 38. The youth court’s adjudication of Elizabeth as a sexually abused child is supported by sufficient evidence, and the judge did not abuse her discretion by excluding hearsay or denying a continuance. We therefore affirm.
¶ 39. THE JUDGMENT OF THE JACKSON COUNTY YOUTH COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART .AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Fictitious names are used for all parents and children in order to protect the privacy and anonymity of the minor child involved.

. See Miss.Code Ann. § 43-21-105(m)-(n) (Rev.2015).

. Neither of these two children is at issue in this appeal.

. Betty also claims that the youth court erred by requiring her to pay Dr. Matherne’s fees and by refusing to allow him to be in the courtroom for the last part of Elizabeth's testimony. As we explain below, Dr. Matherne did not testify in this case only because Betty failed to subpoena him, and the youth court did not abuse its discretion by denying her motion for a continuance or by excluding Dr. Matherne's reports. It necessarily follows that the court’s prior orders concerning Dr. Matherne's fees and presence in the courtroom could not have prejudiced Betty’s ability to put on her case. In her last issue, Betty alleges cumulative error, but since she fails to identify any error by the youth court, we need not address this issue.

. “She was apparently more rebellious and more argumentative than the average teenager.” Miss. Power & Light Co. v. Lumpkin, 725 So.2d 721, 725 (¶ 18) (Miss.1998) (commenting on the diagnosis of oppositional defiance disorder).

. A DHS caseworker recalled that in February 2013, Elizabeth said that her stepfather had been touching her inappropriately since the family moved to Jackson County two years earlier. However, Elizabeth’s own testimony that the abuse .occurred only between May and October 2012 remained consistent.

. Compare with M.R.E. 1101(b)(3) ("Except for rules pertaining to privileges, these rules do not apply in the following situations: ... Proceedings for extradition or rendition; probable cause hearings in criminal cases and youth court cases; sentencing; disposition hearings....”); U.R.Y.C.P. 26(a)(3)(ii), (b)(3)(h) & (c)(3)(h) (“The-following evidentia-ry procedures apply to ... disposition hearings: ... The court may consider any evidence that is material and relevant to the disposition of the cause, including héarsay and opinion evidence.”); - Miss.Code Ann. § 43-21-603(2) (Rev.2015) (same)., We note that the Mississippi Supreme Court recently ordered briefing on the question "whether the Mississippi Rules of Evidence apply in youth court sexual abuse adjudication hearings.” In the Interest of J.T., No. 2015-CA-00160 (order handed down January 21, 2016). However, until the Supreme Court rules otherwise, we will continue to follow the authori-. ty cited in the text — including the Uniform Rules of Youth Court Practice, which the Supreme Court adopted in December 2008.

. The State’s brief on appeal and Betty’s reply 'brief delve into thé issue of authentication, but we do not address the issue because it was not the basis of the rulings that Betty identified as error in her opening brief. Moreover, the Twitter printouts that Betty’s attorney attempted to use at trial are not part, of the record on appeal because she never sought to introduce them into evidence, nor did she proffer the documents or ask that they be marked for identification and included in the record. Any issue as to whether the documents were admissible for a non-hearsay purpose is waived because Betty failed to seek to introduce the documents into evidence or maleé a sufficient proffer at trial, failed to articulate any non-hearsay purpose at trial, and failed to raise.that-issue in her opening brief on appeal, . ..